IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:18-cr-00274-IM |
| v. | **OPINION AND ORDER** |
| JOSHUA STEVEN KRUMWIEDE, | |
| Defendant. | |

Kemp L. Strickland & Sarah Barr, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Ave., Suite 600, Portland, OR 97204. Attorneys for the United States.

Benjamin T. Andersen, 101 SW Madison St., Portland, OR 97207. Attorney for Defendant.

**IMMERGUT, District Judge.**

This matter comes before this Court on Defendant's Motion to Dismiss the Indictment for Failure to Preserve Exculpatory Evidence. ECF 80. Defendant is charged with Possession with the Intent to Distribute Methamphetamine, Possession of a Firearm During and in Relation to a Drug Trafficking Crime, and Unlawful Possession of a Firearm by a Felon. ECF 1 at 1-2. Defendant argues the Government violated his due process rights by failing to preserve two pieces of evidence—a backpack and set of keys. This Court held a hearing on Defendant's

PAGE 1 – OPINION AND ORDER

motion on October 30, 2020. For the reasons that follow, Defendant's Motion to Dismiss the

Indictment for Failure to Preserve Exculpatory Evidence is DENIED.

## BACKGROUND

While on patrol on February 4, 2018, Officer Jon Garland of the Salem Police

Department encountered a known criminal informant (hereinafter "the Informant") with an

outstanding arrest warrant.[1] Officer Garland followed the Informant into the parking lot of a

Days Inn located at 1600 Motor Court in Salem, Oregon. Officer Garland then explained to the

Informant that there was an outstanding warrant for his arrest and arrested the Informant at 10:01

AM. ECF 81-1 at 19-20. While being transported to jail, the Informant told Officer Garland that

Defendant Krumwiede and Ms. Jenny Dolan were staying in Room 114 of the Days Inn with a

maroon car parked near the room. *Id*. at 20. The Informant further stated that he had been in

Room 114 the previous night, and there were drugs and at least one gun in the room. *Id* at 20-21.

Officer Garland later learned from a hotel manager that the room was rented by the Informant.

ECF 81-1 at 20-21.

Officer Garland was already aware that Defendant Krumwiede was being investigated for

trafficking in methamphetamines and was associated with firearms. ECF 81-1 at 23-24. Officer

Garland was also aware that Defendant had a federal probation warrant for his arrest stemming

from a case involving possession of a weapon. ECF 81-1 at 24; ECF 85-4 at 4. Officer Garland

was familiar with the Informant as well, having worked with him for approximately one month

---

[1] On December 6, 2018, Senior District Court Judge Anna Brown denied Defendant's Motion to Suppress in this matter. *See* ECF 35. As indicated, this section summarizes and restates facts that the Court found by a preponderance of the evidence in the determination of that motion. Any facts included in this summary that were not included that opinion, this Court now finds by a preponderance of the evidence based on the evidence in the record.

PAGE 2 – OPINION AND ORDER

in a prior narcotics investigation. ECF 81-1 at 48. In that investigation, Officer Garland had no

issues with the Informant being untruthful. ECF 81-1 at 16; ECF 85-4 at 4. Officer Garland was

aware that other detectives had worked with the Informant and knew that they also had had no

issues with the Informant's truthfulness or reliability. ECF 81-1 at 17.

In response to the Informant's tip, Salem Police set up surveillance at the Days Inn.

Officer Sean Bennett observed Defendant and Ms. Dolan exit Room 114 and move toward a

maroon vehicle. Defendant carried some property and a set of keys that he used to enter the

vehicle.[2] *Id.* at 64, 72. Defendant and Ms. Dolan stepped into the vehicle with their items. *Id*. at

65. Defendant leaned toward the ignition area, which caused Officer Bennett to believe that

Defendant was about to start the vehicle. ECF 81-1 at 66. Office Bennett radioed the other

officers and the Salem Police tactical arrest team moved in. Defendant was arrested and taken

into custody. *Id*.

Officers obtained a search warrant for the vehicle and a search warrant for the cell phone

Defendant had on his person. ECF 81-1 at 31-32, 41. Defendant had told Officer Garland that

"he was helping a friend" and that "he placed some bags inside the car . . . behind the driver's

seat." ECF 81-1 at 30 (transcript testimony); ECF 85-4 at 7-8 (Garland affidavit). He also

claimed that he did not know whom the car belonged to. ECF 81-1 at 30; ECF 85-4 at 7. The

phone seized from Defendant and later searched pursuant to the warrant contained photographs

of the maroon car and an insurance card for the maroon car apparently dated two days before the

arrest. ECF 85 at 6-7; ECF 85-2 (photograph of car); ECF 85-3 (photograph of insurance card).

---

[2] Officer Bennett cannot recall the exact nature of the property Defendant carried to the car. *See* ECF 81-2 at 29 ("Mr. Krumwiede had some bags or some type of objects under his arm, and a multi-colored lanyard with some keys in it in his other hand."); ECF 81-1 at 65 ("Mr. Krumwiede had a bag, or something, under his arm . . . ."); ECF 81-1 at 72 (Bennett testimony that "[s]omething appeared to be a bag under his arm," which "[p]ossibly" was a "black duffle bag").

In the vehicle, the officers found multiple bags, including a black-and-orange backpack. ECF 81-2 at 147-50. They also found a black duffle bag that contained "men's clothing" and "an Oregon Duck[]s zipper pouch which contained [according to another officer's counting at the scene] $5,000 in U.S. currency." ECF 81-2 at 104-05. The backpack had a small lock on the zipper of the main pocket that required a key to open. ECF 81-2 at 149. A second lock was attached to a smaller outer compartment. ECF 81-3. Officer Garland testified at the hearing on this Motion that the locks suggested to him that this backpack contained something of value to someone, such as narcotics. He did not believe the bag itself had any evidentiary value, and he did not think about finding the keys to the backpack's locks during the search. Officer Garland cut open the backpack with a knife and found approximately six pounds of methamphetamine and two loaded firearms. ECF 81-2 at 149 (Garland testimony about cutting open backpack); ECF 81-3 (picture of backpack); ECF 81-2 at 106-15 (Garland testimony about backpack contents). The methamphetamine and firearms were preserved as evidence.[3] ECF 85-1 (forensic report). Officer Garland testified at the hearing that he photographed the backpack and put items not taken into evidence back inside the vehicle. This included the Oregon pouch in which money was found and the backpack in which the drugs and guns were found.

The contents of the backpack were later tested by Salem Police. ECF 85-1; ECF 111-1. Two fingerprints found on packaging inside the backpack, one on a bag containing methamphetamine and one on an empty bag, matched those of Defendant. ECF 85-1 at 2; ECF 111-1 at 1.

---

[3] Defendant also argues, in supplemental briefing, that a single bag that was apparently in the backpack when seized was not placed into evidence. ECF 108. He does not argue that this somehow exculpates him, but rather that this "undercuts [the Government's] assertion that there was no problem in the failure to preserve the backpack itself." ECF 108 at 3.

PAGE 4 – OPINION AND ORDER

## DISCUSSION

Defendant argues that the Government deprived him of the ability to establish his defense by failing to preserve (1) the black-and-orange backpack which held the methamphetamine and guns, and (2) a set of keys in the possession of the Informant. ECF 81 at 1, 5. Defendant asserts that these items might have connected the Informant to the backpack, either through fingerprint or DNA evidence, or by use of the Informant's keys to unlock the padlocks on the backpack. *Id.* at 6.

The Government's constitutional duty to preserve evidence is not without bounds, but rather is "limited to evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488–89 (1984). When the Government's failure to preserve evidence constitutes a violation of due process, dismissal of the indictment is the appropriate remedy. *United States v. Cooper*, 983 F.2d 928, 929 (9th Cir. 1993). A defendant may establish that a failure to preserve evidence violates due process in two ways. *See United States v. Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th Cir. 2012). First, the Government always violates due process when it withholds "material[ly] exculpatory evidence," regardless of bad faith. *Id.* However, if the evidence is only "potentially exculpatory" rather than "materially exculpatory," the failure to preserve the evidence does not rise to a level of a due process violation unless the defendant shows "bad faith on the part of police." *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). In addition, a defendant must show that the evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489; *see also United States v. Vera*, 231 F. Supp. 2d 997, 999 (D. Or. 2001).

## A.  Potentially Exculpatory

As a preliminary matter, this Court is not persuaded that the missing evidence constitutes exculpatory evidence. Defendant concedes the missing evidence is, at most, "[p]otentially useful or exculpatory."[4] ECF 81 at 5. "Potentially exculpatory" or "potentially useful" evidence, as described by the Supreme Court in *Youngblood*, is "evidentiary material of which no more can be said than it could have been subject to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57. Defendant argues the missing evidence could be tested to show the Informant, and not Defendant, owned the backpack. ECF 81 at 6. Further, Defendant argues that if the Salem Police Department had seized the Informant's keys when the Informant was arrested, the officers could have tested the keys on the locks on the backpack to determine its owner.

The Government disputes the exculpatory value of the backpack because fingerprints matching Defendant were found on a package of methamphetamine inside the backpack.[5] ECF 85 at 4. The Government argues, therefore, that any evidence gathered from the outside of the backpack would not exculpate Defendant from possessing the contents of the backpack. *Id.* Similarly, even if the Informant had a key that opened a lock on the backpack, it does not undermine Defendant's connection to the contents inside the backpack.

---

[4] Plaintiff asserts that the backpack is both "potentially useful" and "materially exculpatory," ECF 81 at 5, but only analyzes the issue under the "potentially useful" standard. *Id.* at 5-9.

[5] The Government's Opposition to Defendant's Motion to Dismiss, filed on May 29, 2020, asserts that a single fingerprint belonging to Defendant was found. *See* ECF 85 at 4. On July 9, 2020, a forensic report identified a second fingerprint belonging to Defendant on the "assorted plastic packaging" inside the backpack. ECF 111-1 at 1. The Government references two fingerprints in its Response in Opposition to Defendant's Motion to Compel, filed on October 26, 2020. *See* ECF 111 at 8. The Court considers this additional evidence of a second fingerprint in consideration of the Motion to Dismiss as well.

Salem Police recovered the backpack from inside a vehicle that they had seen Defendant

approach and get into while holding some property. ECF 81-1 at 72. Later in the investigation,

authorities discovered in a cell phone seized from Defendant photographs of this vehicle and an

associated insurance identification card dated two days before the arrest, further establishing

Defendant's possessory interest in this vehicle. *See* ECF 85 at 6-7; ECF 85-2; ECF 85-3.

Defendant told Officer Garland that he had "placed some bags inside the car . . . behind the

driver's seat." ECF 81-1 at 30. At the hearing on this Motion Officer Garland testified that the

backpack was found in the area of the car right behind the console, which would have been right

behind and within reach of the driver's seat. Other luggage in the car contained a prescription pill

bottle with Defendant's name on it. ECF 81-2 at 115. The only passenger in the car, Ms. Dolan,

disclaimed ownership of any items except her makeup bag and cell phone. ECF 81-1 at 69. Even

if the backpack contained DNA or fingerprint evidence to connect the Informant or another party

to the backpack, that evidence would not nullify Defendant's possession of the backpack or his

connection to its contents. Given Defendant's connection to the vehicle, the backpack's

placement in the vehicle, and the fingerprint evidence on the bags inside the backpack, this Court

is not persuaded that the backpack and the possibility of the Informant's keys might have

exonerated Defendant.

## B.  Bad Faith and Apparent Exculpatory Value

Even assuming that the missing evidence is potentially exculpatory, Defendant has failed

to demonstrate that the officers acted in bad faith. The failure to preserve potentially exculpatory

evidence does not constitute a due process violation unless a defendant can show bad faith on the

part of the police. *Youngblood*, 488 U.S. at 58. The presence of bad faith "turns on the

government's knowledge of the apparent exculpatory value of the evidence at the time it was lost

or destroyed, because without knowledge of the potential usefulness of the evidence, the

PAGE 7 – OPINION AND ORDER

evidence could not have been destroyed in bad faith." *United States v. Zaragoza-Moreira*, 780

F.3d 971, 977 (9th Cir. 2015) (citations omitted). "Bad faith requires more than mere negligence

or recklessness." *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011); *see also United

States v. Estrada*, 453 F.3d 1208, 1212–13 (9th Cir. 2006) (finding no bad faith absent a showing

of "malicious intent").

The analysis in *United States v. Del Toro-Barboza*, 673 F.3d 1136 (9th Cir. 2012), is

instructive on this point. In *Del Toro-Barboza*, two defendants convicted for bulk cash

smuggling and failure to file reports on exporting monetary instruments appealed their

convictions. 673 F.3d at 1141. Border patrol officers had searched their van, which was "filled

with about 38 brown cardboard boxes of varying sizes, all sealed" and with "names written on

the boxes." *Id*. at 1142. One officer "pulled one box out of the van because it was significantly

heavier than the others around it." *Id*. This box had no writing on it and was sealed. *Del Toro-

Barboza*, 673 F.3d at 1142. Inside this box was a black duffle bag which contained large bundles

of U.S. currency. *Id*. The box in which the cash-filled duffle bag was found and the currency

itself were not preserved. *Id.* at 1149. The Ninth Circuit found that the "exculpatory nature of the

money or the box was not apparent," even though the box was sealed and the officer was

interested in it due to its distinctiveness from the other boxes. *Del Toro-Barboza*, 673 F.3d at

1149 & n.3. Applying the bad faith analysis, the Ninth Circuit found no bad faith and stated that

"it appears [from officer testimony] that the box was abandoned . . . because it was seen as

unimportant." *Id*. at 1149. The court remarked, "It might have been a better practice for the

government to have retained both the box and the money for Defendants to test, but '[b]ad faith

requires more than mere negligence or recklessness.'" *Id.* at 1150 (quoting *Flyer*, 633 F.3d at

916).

Here, Defendant contends that the officers acted in bad faith because Salem Police were aware that the backpack might belong to the Informant. ECF 81 at 7-8. In particular, Defendant argues that Officer Garland was aware the ownership of the backpack was in question because the Informant was known to be untrustworthy, Defendant indicated that he did not own some of the bags in the vehicle, and the officers were forced to cut open the backpack to access its contents. *Id*. But the facts in this record do not show that the backpack and keys had apparent exculpatory value, nor that officers deliberately discarded the evidence to further the Government's case against Defendant. *See United States v. Barton*, 995 F.2d 931, 936 (9th Cir. 1993) (no bad faith where nothing indicated that officers destroyed evidence for strategic gain). Officer Garland testified at the hearing that he did not consider the backpack itself to possess any evidentiary value. The officers preserved a photograph of the backpack and its contents, ECF 81-3, and apparently thought that was sufficient. Officer Garland testified at the hearing that containers such as the Oregon Ducks bag that contained money and the backpack that contained drugs and guns were placed back into the car, which was impounded.

Defendant has not shown bad faith in the Salem Police officers' reasonable inferences based on the facts in the record. Despite Defendant's representations to the contrary, the Informant had not proven to be an untrustworthy resource for police. Officer Garland testified that the Informant had previously provided accurate information to police and he considered the Informant to be truthful. ECF 81-1 at 15–16. Further, as to the specific tip in this case, the information provided by the Informant was corroborated by Salem Police's surveillance. The Informant told Officer Garland that Defendant and Ms. Dolan were staying in Room 114, they were associated with a maroon car parked near that room, and Defendant "was in possession of a quantity of illegal narcotics and in possession of a firearm." ECF 85-4 at 3 (Garland affidavit).

PAGE 9 – OPINION AND ORDER

Later, Salem Police observed a male and female "walk from the area of room 114 to the [maroon car]." *Id*. at 5. Officer Garland was also aware that Defendant was already under investigation for drug trafficking when the Informant in this case provided the tip. ECF 81-1 at 23-24. Another officer had "described [Defendant] as being a methamphetamine dealer, [who] deals in larger quantities within the Salem and Portland area, and [who is] also associated with firearms." *Id*. at 23. Accordingly, all information provided by the Informant had been corroborated by the time the officers decided not to retain the backpack.

Next, although Defendant indicated that some of the bags may not belong to him, Salem Police had reason to believe that the black-and-orange backpack containing the drugs and firearms did indeed belong to Defendant. The backpack was found in the vehicle that Defendant was apparently about to drive away, ECF 81-1 at 66, which matched the car and location described by the Informant. The black-and-orange backpack was in the middle of the backseat, accessible to the passenger and the driver. ECF 81-2 at 116. Statements by both Defendant and Ms. Dolan supported the officers' reasonable belief that Defendant owned the backpack. Ms. Dolan had disclaimed any ownership beyond a "makeup bag within the vehicle." ECF 81-1 at 33–34. Defendant explicitly stated that "he placed some bags inside the car. Specifically, he told [Officer Garland] he placed these bags behind the driver's seat." ECF 81-1 at 30. The totality of circumstances indicated that the backpack belonged to Defendant. Further, Officer Garland testified at the hearing that he considered only Defendant and Ms. Dolan to potentially own a key that could unlock the backpack. Officer Garland also testified that he found nothing in the vehicle that suggested the Informant's involvement. Defendant has not shown that officers were on notice, the day of the search or later in the investigation, that the backpack might belong to the Informant.

PAGE 10 – OPINION AND ORDER

Finally, Defendant only speculates that officers cut open the backpack because Defendant did not possess a key to open the lock. The record shows that police returned "at night to execute the search warrant," which included opening the bags within the vehicle. ECF 81-2 at 147. There is no evidence that Defendant necessarily lacked the means to unlock the backpack. This Court concludes that Defendant has failed to demonstrate that Salem Police acted in bad faith when they failed to preserve the backpack.

Although preserving the backpack that contained the drugs and firearms might have been a better practice, the failure to do so falls short of bad faith. Officers maintained a photograph of the backpack as evidence, *see* ECF 81-3, and preserved the contraband located inside the backpack over which Defendant exercised control. Defendant has had the opportunity to test the package of methamphetamines and the firearms for fingerprints of others to determine whether another person touched the drugs or guns. Whether another person touched the outside of the backpack or had keys to the lock simply does not exonerate Defendant from possession of the drugs and guns inside. Rather, it might show he has co-conspirators. Further, whether the Salem Police failed to preserve another plastic bag that was apparently in the backpack, ECF 108 at 1, does not negate the fact that two of Defendant's fingerprints were found on bags inside the backpack.

With respect to the keys, Defendant concedes that the Informant's keys did not have apparent exculpatory value at the time of the Informant's arrest. ECF 81 at 8. Defendant contends, however, that the Informant's keys gained apparent exculpatory value when "police realized that the backpack at issue was locked with keyed padlocks." *Id.* But Defendant also had keys on a lanyard in his possession at the time he walked out of the motel and put a key into the ignition, right before he was arrested. ECF 81-2 at 29; ECF 81-2 at 147-48. Officers had no

PAGE 11 – OPINION AND ORDER

reason to connect the keys in the Informant's possession to the locks on the backpack. There is

no evidence in the record that that the police ever tested whether Defendant's lanyard keys,

which were in the ignition, opened the locks on the backpack. *See* ECF 81-2 at 148-50

(describing "methodical" search process, moving from front to back of vehicle). Furthermore,

Officer Garland testified at the hearing that at the time of the search, he did not believe the

Informant possessed keys that could open this backpack. This Court finds Defendant has failed

to demonstrate that officers acted in bad faith when failing to preserve the Informant's keys.

As conceded by the Government, Defendant is entitled to point out the Government's

failure to preserve the backpack and the Informant's keys as part of his defense at trial. ECF 85

at 9. He also is free to call Ms. Dolan to testify regarding the ownership of the backpack and its

contents. Accordingly, this Court finds Defendant has failed to meet his burden of establishing

the Government violated his due process rights when the Salem Police failed to preserve the

backpack or the Informant's keys.

## CONCLUSION

This Court finds Defendant failed to establish that the failure to preserve the backpack

and the Informant's keys amounts to a violation of Defendant's constitutional right to due

process. Accordingly, Defendant's Motion to Dismiss the Indictment is DENIED.

**IT IS SO ORDERED**.

DATED this 3rd day of November, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 12 – OPINION AND ORDER