**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:18-cr-00274-IM-1 |
| v. | **OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE CONVICTIONS AND SENTENCES PURSUANT TO 28 U.S.C. § 2255** |
| **JOSHUA STEVEN KRUMWIEDE**, | |
| Defendant. | |

Natalie K. Wight, United States Attorney, Kemp L. Strickland, Assistant United States Attorney, and Sarah Barr, Assistant United States Attorney, United States Attorney's Office, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204. Attorneys for the Government.

Michelle A. Ryan, Law Office of Michelle A Ryan, LLC, 3439 SE Hawthorne Blvd., #225, Portland, OR 97214. Attorney for Defendant.

**IMMERGUT, District Judge.**

Defendant Joshua Steven Krumwiede moves under 28 U.S.C. § 2255 to vacate his

convictions and sentences. Defendant's Motion to Vacate Convictions and Sentences Pursuant to

28 U.S.C. § 2255, ECF 218; Defendant's Brief in Support of § 2255 Motion to Vacate

PAGE 1 – OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE
CONVICTIONS AND SENTENCES PURSUANT TO 28 U.S.C. § 2255

Convictions and Sentences ("Mot."), ECF 230.[1] As explained below, Defendant has not established that he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. Accordingly, this Court DENIES his § 2255 Motion.

## LEGAL STANDARDS

Under 28 U.S.C. § 2255, a defendant may move to vacate a criminal conviction obtained in violation of the United States Constitution. 28 U.S.C. § 2255(a); *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011). The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 687 (1984), including during plea negotiations, *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). No hearing for a § 2255 motion is necessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Withers*, 638 F.3d at 1062 (quoting 28 U.S.C. § 2255(b)).

## BACKGROUND

Defendant was indicted by a grand jury in June 2018. ECF 1. He was charged with (1) possessing with intent to distribute methamphetamine, (2) possessing a firearm in furtherance of a drug trafficking crime, and (3) possessing a firearm as a felon. *Id.* Assistant Federal Public Defender ("AFPD") Robert Hamilton was appointed to represent Defendant. ECF 7. As laid out during Defendant's change of plea, on February 4, 2018 Defendant was arrested pursuant to a warrant as he was preparing to drive out of a hotel parking lot. ECF 190 at 38. The car was later searched, also pursuant to a warrant, and the officer discovered a backpack containing

---

[1] Defendant's initial motion filed in November 2022, ECF 218, includes claims for relief not discussed in his later briefing filed in September 2023, ECF 230. For purposes of Defendant's § 2255 Motion, this Court considers only the claims for relief addressed in his supporting brief.

PAGE 2 – OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE CONVICTIONS AND SENTENCES PURSUANT TO 28 U.S.C. § 2255

"approximately six pounds of methamphetamine," "packaging materials for further distribution" of that methamphetamine, and "two firearms." *Id.* A red "Tupperware container" was also found in the backpack. ECF 176 at 29.

In July 2018, the Government offered Defendant a plea deal. ECF 234, Ex. A; ECF 20 at 2. The offer required Defendant to plead guilty to the methamphetamine trafficking count, agree that he violated his supervised release in a prior federal case, and agree he was subject to the firearms enhancement at sentencing. ECF 234, Ex. A. According to the deal, the parties would jointly recommend a 150-month prison sentence with a concurrent sentence for the supervised release violation. *Id.* Defendant rejected the offer.

After rejecting that offer, Defendant filed a motion to suppress, a motion for a *Franks* hearing, and a motion to dismiss the methamphetamine trafficking charge. ECF 24, 25. The Government responded, ECF 27, 28, 34, and the Honorable Anna J. Brown held a hearing at which the Government presented witnesses and argument, ECF 31. In December 2018, Judge Brown denied the motions. ECF 35. This case was reassigned to this chambers on August 14, 2019. ECF 45.

In October 2019, AFPD Hamilton moved to continue the trial date because he had compiled evidence relating to mitigation and requested a new plea deal. ECF 47 ¶¶ 4–5. On October 15, 2019, the Government made a temporary offer of twelve years. ECF 234, Ex. B. This was below the 150-month offer the Government had originally extended. *Id.* Defendant had two days to accept the 12-year offer. *Id.* He rejected the 12-year offer and chose to proceed to trial.

On October 22, 2019, AFPD Hamilton moved to withdraw. ECF 51. This Court granted that motion, ECF 54, and, on November 4, 2019, appointed Benjamin Andersen to represent Defendant, effective October 29, 2019, ECF 56.

Prior to Mr. Andersen's appointment, the Government had provided six volumes of discovery to defense counsel. Andersen Decl., ECF 231 ¶ 3. On November 25, 2019, the Government produced Volume 7, which contained an analytical report of Defendant's seized cellphone, including photographs, text messages, and location data. Andersen Decl., ECF 231 ¶¶ 3–4. One photograph in that analytical report was highly inculpatory: It depicted Defendant and his girlfriend reflected in the mirror of a hotel room the day before his arrest, and in the bottom third of the righthand side of the photograph, the corner of a red-lidded container, similar to the container found in the car during the February 4, 2018 search, is partially in the frame. *See* ECF 234, Ex. E (row 9). The photograph shows that Defendant took the picture—it is a selfie, not a candid photograph. *Id.* The report states that the photograph was taken February 3, 2018, the day before Defendant's arrest. *Id.* As explained below, the Government, and eventually defense counsel, realized the inculpatory nature of this photograph shortly before trial.

Meanwhile, as Defendant explains, in early 2020, while his case was pending and he was in custody, the World Health Organization declared COVID-19 a pandemic. Mot., ECF 230 at 4. In March 2020, "normal operations at the courts, jails, and prisons were affected, and in-person visitation was curtailed until after vaccinations were available in early 2021." *Id.* at 4–5. Kristine San Filippo, the investigator hired by Mr. Andersen in November 2019, states that she met with Defendant "in contact visits a few times before the COVID-lockdown," but that following the lockdown "[her] visits with him were non-contact visits." Declaration of Kristine San Filippo, ECF 232 ¶ 3.

On April 28, 2021, the day before the Pretrial Conference and less than a week before trial, the Government filed an amended exhibit list adding the inculpatory photograph. ECF 160. During the Pretrial Conference the next day, the Government mentioned that it was moving to admit several photographs from the seized cellphone, including the photograph depicting Defendant and a woman in the bathroom of the Best Western hotel in Oakridge, Oregon. ECF 175 at 75–77 (referencing Government Trial Exhibit 42). The Government acknowledges that it did not appreciate the inculpatory nature of the photograph until the week before trial when it sought to add it to its exhibit list. Government's Response to Defendant's Motion to Vacate Sentence Under 28 U.S.C. § 2255 ("Resp."), ECF 234 at 5.

On May 3, 2021, the day before trial was scheduled to begin, this Court held another Pretrial Conference and inquired into why the Government needed Exhibit 42 to come in as evidence in the trial. ECF 176 at 29. The Government explained that the exhibit was necessary and relevant because it depicted the red-lidded plastic container found in the backpack containing drugs and paraphernalia. *Id.* This Court reserved ruling on the admissibility of this exhibit. *Id.* at 31.

On the following day—the first day of trial—before voir dire began, Defendant and his counsel approached this Court about Defendant's assertions that he had never seen the full-sized version of the inculpatory photograph before the Thursday, April 29 Pretrial Conference and that the first time he reviewed it was on Sunday, May 2. ECF 190 at 5. Mr. Andersen stated that he had printed out only the smaller, thumbnail-sized versions of these photographs during pretrial preparation. *Id.* at 12–13.

Mr. Andersen noted that Defendant was stating that had he been aware of this incriminating photograph earlier, "he would have approached" plea negotiations "differently."

PAGE 5 – OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE
CONVICTIONS AND SENTENCES PURSUANT TO 28 U.S.C. § 2255

*Id.* at 11. Mr. Andersen noted that he himself would have done so had he been aware of the highly incriminating nature of the photograph, which he did not become aware of until the Pretrial Conference. *Id.* at 11–12. Defendant expressed concern that the Government's plea offer would be "way higher" now than it had been earlier, "when [he] was at a spot where [he] could have taken something." *Id.* at 12.

After a break for plea negotiations, the parties reached a plea agreement in which Defendant would agree not to ask for less than 156 months (13 years) and the Government would not ask for more than 17 years but could argue for consecutive sentencing on the supervised release violation. *Id.* at 16. Later that morning, Defendant entered a guilty plea to possession with intent to distribute methamphetamine and unlawful possession of a firearm. *Id.* at 45; ECF 172.

On November 30, 2021, this Court sentenced Defendant to a 13-year sentence on the criminal charges with a 24-month consecutive sentence on the supervised release violation. ECF 204 at 49–50; ECF 201.

## DISCUSSION

### A.  Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a defendant must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) the error prejudiced him. *Strickland*, 466 U.S. at 687–88.

Whether counsel's representation fell below an objective standard of reasonableness is assessed against "prevailing professional norms" of the legal community as reflected in "American Bar Association standards and the like." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688). Courts evaluate the reasonableness of counsel's

conduct "considering all the circumstances" and "facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 688, 690. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.*

Even if counsel performed deficiently, the defendant must also demonstrate actual prejudice. *Strickland*, 466 U.S. at 687. That is, an error that "actually had an adverse effect on the defense." *United States v. Walter-Eze*, 869 F.3d 891, 906 (9th Cir. 2017) (quoting *Strickland*, 466 U.S. at 693). The defendant must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

### 1. Deficient Performance

Defendant argues that his defense counsel's performance was deficient because counsel failed to (1) reasonably investigate and review discovery and (2) provide Defendant with a copy of the Government's discovery or review with Defendant that discovery. As explained below, Defendant has not established that he received constitutionally deficient assistance from Mr. Andersen.

#### a. Failure to Investigate and Review Discovery

Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see United States v. Tucker*, 716 F.2d 576, 583 n.16 (9th Cir. 1983) ("[F]ailure to conduct a reasonable pretrial investigation may in itself amount to ineffective assistance of counsel."); *Harrington v. Richter*, 562 U.S. 86, 106 (2011) (*Strickland* "permits counsel to 'make a reasonable decision that makes particular investigations unnecessary.'" (quoting *Strickland*, 466

U.S. at 691)). Also, "[a]n attorney can avoid activities that appear 'distractive from more important duties.'" *Id.* at 107 (quoting *Bobby v. Van Hook*, 558 U.S. 4, 11 (2009) (per curiam)). "Counsel [is] entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Id.*

Here, the analytical report of Defendant's cellphone "contained a significant amount of information, including text messages, location data[,] and photographs." Andersen Decl., ECF 231 ¶ 4. The Government explains that the 116-page report "included 380 call log entries, 123 MMS/SMS messages, and 643 data files including audio, texts, video, and photos." Resp., ECF 234 at 4. There were 384 photographs. *Id.* And, given that the Government had already produced discovery before Mr. Andersen was appointed, this analytical report was in addition to the other discovery produced in Volume 7 and the preceding six volumes, which amounted to "more than a thousand pages of discovery." *Id.* Defendant's counsel chose to "focus" his review of the phone analytics on "the text messages and location data." Andersen Decl., ECF 231 ¶ 5.

Defense counsel failed to recognize the significance of the photograph, but this Court cannot conclude that this failure amounted to objectively unreasonable conduct. Given that Mr. Andersen was focused on other data from the analytical report—a reasonable approach "to balance limited resources in accord with effective trial tactics and strategies," *Richter*, 562 U.S. at 107—it is reasonable that the photograph was overlooked. Defendant argues that such tactics and strategies are "only reasonable after a thorough review of the discovery," Defendant's Reply to USA's Response to § 2255 Motion ("Reply"), ECF 241 at 12, which assumes that Mr. Andersen's review was not thorough. This reasoning is circular—if Mr. Andersen had done a thorough review he would not have overlooked the photograph, and because he overlooked the photograph he did not conduct a thorough review. At bottom, this Court disagrees with the

premise. Defense counsel could have conducted a thorough review and nonetheless overlooked the photograph. Granted, Mr. Andersen could have made different decisions, like opening, viewing, and scrutinizing each photograph one by one in full size, *see* Reply, ECF 241 at 3–4, or reviewing a subset of photographs with Defendant on a computer, *id.* at 13–14, but his failure to make those decisions is not constitutionally deficient.

The cases cited by Defendant in support of his ineffective assistance of counsel argument are all distinguishable, and they help illustrate what divides reasonable pretrial investigations from unreasonable. For instance, Defendant relies on *Kimmelman v. Morrison*, 477 U.S. 365 (1986), for the proposition that the "*Strickland* performance standard [is] not met when defense counsel failed to do any pretrial investigation and, as a result, failed to discover before trial that the prosecution possessed critical evidence; failure to do so was not based on strategy, but on counsel's mistakes." Reply, ECF 241 at 9 (internal quotation marks omitted). In *Morrison*, defense counsel "conducted *no* pretrial discovery," in part due to ignorance of the law. 477 U.S. at 385 (emphasis added); *id.* (describing "a complete lack of pretrial preparation"). That is in stark contrast to what occurred here. Likewise for *House v. Balkcom*, 725 F.2d 608, 617 (11th Cir. 1984), in which counsel failed "to obtain rudimentary discovery" because she was "too busy." In *House*, defense counsel failed to seek defense witnesses, failed to interview the state's witnesses, and sought no discovery from the prosecution or police. *Id.* Again, those facts are a far cry from the conduct Defendant complains of here and presented on this record.[2] Defendant

---

[2] This Court located one recent Ninth Circuit case that further shows by way of contrast how Defendant's case differs from those involving constitutionally deficient assistance due to a failure to investigate. In *Staten v. Davis*, 962 F.3d 487, 489–90 (9th Cir. 2020), the defendant was convicted of murdering his parents and sentenced to death. The Court concluded that defense counsel "did not recognize the possible significance of [an] incident and failed to investigate it fully," and counsel's ultimate failure to present evidence relating to that incident amounted to ineffective assistance. *Id.* at 495. The "incident" was multiple witnesses seeing gang

PAGE 9 – OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE CONVICTIONS AND SENTENCES PURSUANT TO 28 U.S.C. § 2255

accuses Mr. Andersen of missing one piece of evidence—albeit an important piece—during his pretrial preparation, not of failing to conduct pretrial discovery altogether.

To be clear, this Court's holding is narrowly drawn and reflects consideration "of all the circumstances" present on these facts. *See Strickland*, 466 U.S. at 690; *id.* at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). In all criminal cases, counsel has a duty to make reasonable pretrial investigations, which includes reviewing discovery. Here, on this record, Mr. Andersen fulfilled that duty.

### b. Failure to Provide Defendant with Evidence or Review with Defendant the Evidence

Defendant argues that defense counsel must "provid[e] the defendant with a copy of the government's discovery, particularly where a defendant requests this discovery." Mot., ECF 230 at 11 (first citing Oregon State Bar, Report of the Task Force on Standards of Representation in Criminal and Juvenile Delinquency Cases, April 25, 2014, Standard 2.2 – Client Contact and Communication; and then citing Oregon Rule of Professional Conduct 1.4). "Alternatively," he argues, "counsel or someone on defense counsel's team must go over the discovery with the defendant." *Id.* According to Defendant, "he had not seen all the discovery until two to three weeks prior to the hearing" this Court held on April 15, 2021, regarding Mr. Andersen's motion to withdraw. Mot., ECF 230 at 11; ECF 154.

---

members drive by the crime scene on the morning of the murders and overhearing them say, "yeah we got them." *Id.* Although multiple witnesses mentioned the incident to counsel during their interviews, he did not "probe[] the issue [or] determine[] that the witnesses' stories were not credible." *Id.* As with the cases discussed above, this is meaningfully distinguishable from the facts here.

The Government responds that Defendant "offers no evidence that it is standard practice for defense attorneys to create full-sized photos of every thumbnail photo in a cell phone extraction report—and provide a copy or review with defendants those full-sized photos—which were not ever part of the discovery." Resp., ECF 234 at 9.

On reply, Defendant also points to the American Bar Association ("ABA") Guidelines, which state that "[d]efense counsel should keep the client reasonably and currently informed about developments in and the progress of the lawyer's services, including . . . discovery . . . . Information should be sufficiently detailed so that the client can meaningfully participate in the representation." Reply, ECF 241 at 11 (alteration in original) (quoting ABA Guidelines, Criminal Justice Standards, Defense Function, Standard 4-3.9 (4th ed. 2017)).

The Government misconstrues Defendant's argument—Defendant contends that it was constitutionally deficient for defense counsel to fail to provide him with all discovery, regardless of formatting, or review all discovery with him. Even so, Defendant still has not established that defense counsel's actions or omissions here were incompetent. At least one district court in the Ninth Circuit has rejected the proposition that a failure to review *all* discovery with a client amounts to ineffective assistance of counsel. *Gray v. United States*, No. CR 16-5600 BHS, 2019 WL 3564824, at *4 (W.D. Wash. Aug. 6, 2019). Similarly, this Court finds that Defendant has failed to establish that providing a defendant with all discovery or reviewing all discovery with a defendant are "[p]revailing norms of practice." *See Strickland*, 466 U.S. at 688. Defendant's sources suggest that keeping a client apprised of developments and progress relating to discovery, and being responsive to a client's requests, are prevailing norms, but within those guideposts is a "range of legitimate decisions" counsel could make. *See id.* at 689. Defendant has

not shown that Mr. Andersen's conduct fell outside of that range, particularly considering the effects of the intervening COVID-19 pandemic on visitation to correctional facilities.

## 2. Prejudice

Even assuming defense counsel's performance were objectively deficient, Defendant must still establish that there is a reasonable probability he would have been offered and taken the 12-year plea offer had he known of the inculpatory evidence in the record. *See* Mot., ECF 230 at 10–15; Resp., ECF 234 at 10–14. Given that the parties do not argue otherwise, this Court assumes without deciding that a better-plea theory is a cognizable theory of *Strickland* prejudice in this case.[3] Defendant argues throughout his briefing that "[b]ut for counsel's deficient performance, he would have accepted the 12-year plea offer." Mot., ECF 230 at 13; *see also* Reply, ECF 241 at 17 ("But for the deficient performance, Mr. Krumwiede could have received a 12-year sentence or a sentence lower than 13-years with 24 months consecutive for his [supervised release violation].").

The timeline belies Defendant's argument. Defendant rejected the 12-year offer before Mr. Andersen was appointed and before the Government produced Volume 7 with the

---

[3] As the Tenth Circuit has explained, "[a]t a minimum, it is open to significant doubt whether the better-plea theory is a cognizable theory of *Strickland* prejudice." *United States v. Dominguez*, 998 F.3d 1094, 1116 (10th Cir. 2021) (collecting cases from the Sixth, Seventh, D.C., Fourth, and Fifth Circuits). Although the Ninth Circuit appears to have recognized the better-plea theory as cognizable for prejudice under *Strickland*, it has recently done so in the unique context of immigration cases, where a plea to certain crimes can result in removal. *See United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015) ("A petitioner may demonstrate that there existed a reasonable probability of negotiating a better plea by identifying cases indicating a willingness by the government to permit defendants charged with the same or a substantially similar crime to plead guilty to a non-removable offense."); *United States v. Johal*, 853 F. App'x 110, 113 (9th Cir. 2021); *Kumar v. United States*, 773 F. App'x 420, 421 (9th Cir. 2019). For the purposes of this Motion, this Court assumes without deciding that a better-plea theory is cognizable for *Strickland* purposes outside of the immigration context.

inculpatory photograph. Assuming Defendant or Mr. Andersen appreciated the significance of the photograph the very day it was produced, Defendant still cannot establish that he would have taken the 12-year offer because that offer was already off the table. Defendant has not pointed to any evidence showing that the Government would have been willing to re-extend the 12-year deal after he rejected it. Indeed, the Government notes that it "does not plan to offer a 12-year deal" if this Court vacates Defendant's conviction. Resp., ECF 234 at 11. And this Court cannot force the Government to reengage in plea negotiations or reinstate a plea offer that Defendant rejected. *See United States v. Banuelos-Rodriguez*, 215 F.3d 969, 976 (9th Cir. 2000) ("Courts generally have no place interfering with a prosecutor's discretion regarding . . . whether to engage in plea negotiations."). Defendant's assertion that a more favorable sentence would be available to him rests on speculation.

Ultimately, this court will "not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). "Instead," as the Supreme Court has instructed, this Court will "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* Contemporaneous evidence shows that, when the 12-year offer was available, Defendant refused to take it. Contemporaneous evidence does not show that the Government would have been willing to re-extend the 12-year offer weeks or months later, when Defendant would have known of the inculpatory photograph but for his attorney's alleged deficiencies. Instead, Defendant can only speculate that the 12-year offer or a more favorable offer than the one he received would have been available to him. Given this, Defendant cannot establish that he suffered actual prejudice as required by *Strickland*.

**B. Evidentiary Hearing**

Under § 2255, the court must hold an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994). "[N]o hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) (citation and internal quotation marks omitted).

As explained above, Defendant cannot establish prejudice, even viewing the record in his favor. The temporary 12-year offer lapsed more than a month before the Government produced Volume 7 and the inculpatory photograph. Without satisfying the second *Strickland* prong, Defendant is not entitled to relief on his ineffective assistance of counsel claim. Based on this record, this Court declines to hold an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Vacate Convictions and Sentences Pursuant to 28 U.S.C. § 2255, ECF 218, is DENIED.

**IT IS SO ORDERED.**

DATED this 31st day of July, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge